IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JODI  LYNN KEIFNER ,                    )
     Plaintiff                        )
                                      )
       v.                            )         2:12-CV-726
                                      )
COMMISSIONER OF SOCIAL                  )
SECURITY,                               )
     Defendant.                       )


MEMORANDUM and ORDER

Mitchell, M.J.:

      Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the defendant's motion will be granted; the plaintiff's motion will be denied and the decision of the Commissioner will be affirmed.

      On June 4, 2012, Jodi Lynn Keifner by her counsel, filed a complaint pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§405(g) and 1383(c)(3) for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits and supplemental security income benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423 and 1381 cf.

      The plaintiff filed an application for disability and supplemental security income benefits on November 25, 2008 (R.105-110). Benefits were denied on April 7, 2009 (R.49-58).   On June 4, 2009, the plaintiff requested a hearing (R.59), and pursuant to that request a hearing was conducted on May 19, 2010 (R.20-45).   In a decision filed on August 10, 2010, an Administrative Law Judge denied benefits (R.8-19). On September 10, 2010, the plaintiff

requested reconsideration of this determination (R.6), and upon reconsideration, and in a

decision dated March 27, 2012, the Appeals Council affirmed the prior decision (R.1-3). The

instant complaint was filed on June 4, 2012.

In reviewing an administrative determination of the Commissioner, the question before

any court is whether there is substantial evidence in the agency record to support the findings of

the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she

was disabled within the meaning of the Social Security Act..

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the
> record, a judgment affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without remanding the cause for a
> rehearing.   The findings of the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla.   It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d

198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence.

Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999)

Presently before the Court for resolution is a determination of whether or not there is

substantial evidence to support the findings of the Commissioner that the plaintiff is not disabled

within the meaning of the Act.

At the hearing held on May 19, 2010 (R.20-45), the plaintiff appeared with counsel (R.

22), and testified that she was forty-nine years old and had a high school education plus some

business education (R.24-25); that she was five foot nine inches tall and weighed 364 pounds

(R.27); that she is receiving disability from her last employer (R.26); that she worked as a bank

error investigator and bank clerk (R.26-27) and that she drives (R.28).

The plaintiff also testified that she experiences depression (R.30); that she is receiving

mental health treatment (R.28-29); that she takes medication for her mental health condition

(R.31); that she has to lie down two or three times during the day (R.30); that she underwent

surgery for necrotizing fasciitis in 2008 (R.31); that she suffers from insulin dependent diabetes

(R.32); that she has no feeling in her lower legs (R.33); that she can walk for ten minutes, stand

or sit for twenty minutes and lift five to ten pounds (R.34); that she has difficulty concentrating

and takes medication for her memory (R.37) and that she has vision problems (R.38).

In addition, at the hearing a vocational expert was called upon to testify (R.39-44). He

classified the plaintiff's prior work as semi-skilled work at a light exertional level (R.41). When

asked to assume an individual of plaintiff's age, education and work experience who was limited

to sedentary work he testified that such an individual could not return to the plaintiff's prior work

(R.41) but could engage in other forms of sedentary work activities which exist in substantial

numbers (R.42). However, the witness also testified that if the individual had to absent herself

from work on irregular frequent intervals, she could not be gainfully employed (R.43).

The issue before the Court is whether or not the decision of the Commissioner is

supported by substantial evidence.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of not
> less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are

provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.   For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. Section 423(d)(3).   These provisions are also applied for purposes of establishing a period of disability.   42 U.S.C. Section 416(i)(2)(A).

It is provided in 42 U.S.C. Section 1382c(a)(3) that:

(A)... an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.   For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

* * *

(D) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

It is also provided that:

> Notwithstanding the provisions of subparagraphs (A) through (E), an individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State plan approved under subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined.

42 U.S.C. Section 1382c(3)(F).

Pursuant to the authorization contained in 42 U.S.C. Section 1382c(3)(D), the Commissioner has promulgated certain regulations for the implementation of the Supplemental Security Income Program.   While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts.   NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970).   Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff is not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed by the Commissioner.

The plaintiff was treated by Dr. William Bader between August 23, 2007 and March 10, 2008 for conjunctivitis, lumbo-sacral strain, jaw pain, obstructive sleep apnea, nicotine addiction, uncontrolled diabetes with neurological complications and varicose veins. Medication was prescribed (R.172-195).

The plaintiff was hospitalized at St. Clair Memorial Hospital from June 3, 2008 through June 9, 2008 for candida rash, urinary tract infection and diabetic ketoacidosis (R.196-208).

The plaintiff was hospitalized at UPMC Presbyterian Hospital from June 9, 2008 through August 14, 2008 for necrotizing fasciitis of the abdomen and respiratory failure. Nineteen excisions of necrotizing fasciitis were performed. She developed sepsis and multisystem organ failure. Her condition stabilized and she was transferred to a select specialty service for further care (R.209-670).

The plaintiff was treated at St. Clair Hospital between June 3, 2008 and November 11, 2008 for a rash, urinary tract infection and abdominal pain (R.907-960).

The plaintiff was hospitalized at UPMC Presbyterian hospital from October 6, 2008 through November 11, 2008 after being transferred from the specialty services for medical management and rehabilitation. Her wound sites were treated and no infection was present, her diabetes was controlled and future weight reduction was suggested. The plaintiff was discharged to her home with instructions not to drive when taking pain medication, follow a healthy diet and have home health wound care (R.671-751).

Post-operative treatment was rendered between July 9, 2008 and December 15, 2008 by Dr. James Russavage (R.752-770).

The plaintiff received home health care between November 12, 2008 and December 18, 2008 for her abdominal wound. She was instructed on how to care for herself (R.771-837).

The plaintiff was treated at the Sewickley Valley Medical Group between December 8, 2008 and January 12, 2009 for depression, hyperlipidemia, chronic pain and post-hospitalization care (R.838-857).

In a March 9, 2009 report of a psychological evaluation, T. David Newman, Ph.D. noted no disorder but did report that the plaintiff had been depressed by her protracted hospitalization (R.863-866).

In a report of a psychiatric review completed on March 10, 2009, Michelle Santilli, Psy.D. noted a non-severe affective disorder that caused mild functional limitations(R.867-880).

In a report of a March 12, 2009 evaluation, Dr. Roy M. Beerel diagnosed MRSA with flesh-eating bacteria, controlled hypertension, clinical depression, hyperlipidemia and controlled type 2 diabetes. He further noted that the plaintiff could occasionally lift 2-3 pounds, frequently

carry ten pounds, stand or walk for up to an hour and sit up to six hours (R.881-890).

In a residual physical capacity assessment completed on March 24, 2009, Dr. Dilip S. Kar noted that the plaintiff could occasionally lift up to twenty pounds, frequently lift ten pounds, stand or walk for at least two hours and sit for about six hours (R.891-899).

The plaintiff was treated by Dr. Marlynn Singleton between January 21, 2010 and June 7, 2010 for a diabetic leg ulcer and possible urinary tract infection (R.961-989).

The plaintiff was treated at the Chartiers Mental Health Center between May 27, 2009 and June 15, 2010 for depression. Medication was prescribed (R.990-1015).

The relevant regulations require explicit findings concerning the various vocational factors which the Act requires to be considered in making findings of disability in some cases. These regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims.   In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity.   If not, then the severity of the plaintiff's impairment must be considered.   If the impairment is severe, then it must be determined whether he/she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability.   If the impairment does not meet or equal the Listings, then it must be ascertained whether he/she can do his/her past relevant work.   If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations.   If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he/she can exert in engaging in work activity), and if his/her impairment enables him/her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and

work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made.   If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

Based on the evidence presented, the Commissioner concluded:

The claimant meets the insured status requirements of the Social Security Act through December 31, 2012…

The claimant has the following severe impairments MRSA; necrotizing fasciitis; diabetes mellitus; depression,,,

The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments …

In activities of daily living, the claimant has no restriction…

In social functioning, the claimant has no difficulties …

With regard to concentration, persistence or pace, the claimant has moderate difficulties …

Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated " episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied…

The claimant's depression disorder has not caused repeated episodes of decompensation; or a residual process that has resulted in such marginal adjustment that even minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensation; or a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. Likewise, the claimant can function independently outside of her home…

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work …

except: no climbing, crawling, kneeling, squatting or balancing on heights; no foot controls; no bending at waist to 90 degrees; limited to simple repetitive, routine work processes and settings…

The claimant is a 49-year-old mother of one child. She is a high school graduate. The claimant has past relevant work as a bank account investigator and is currently on long-term disability. The claimant is right hand dominant. The claimant is 5'9" in height and weighs 364 pounds. The claimant lives independently in an apartment with her disabled daughter, who suffers from cerebral palsy…

The claimant alleges disability due to MRSA and Necrotizing fasciitis. The evidence shows that the claimant was hospitalized from April 2008 through November 2008 for treatment of her MRSA and Necrotizing fasciitis, and that her treatment lasted for a period of six months and therefore did not meet the 12-month requirement…

The claimant additionally alleges disability due to insulin dependent diabetes mellitus, with foot neuropathy. The claimant testified that she takes insulin for treatment… although the claimant's high blood sugar remains uncontrolled, she does not treat with a specialist for her condition. The claimant testified that she eats due to her depression and is aware that it is a contributing factor to her uncontrolled high blood sugar … The claimant does not need an assistive device to ambulate.

The claimant received mental health treatment beginning in May 2009, which stopped in November 2009, due to her losing her health benefits. The claimant resumed treatment in January of 2010 … the report dated June 15, 2009 states that the claimant's "mood is overall fairly comfortable and her affect congruent." "She expresses herself well and is able to reach goal ideas without any difficulty." Her thoughts are logical, sequential and well organized, insight and judgment are fair." It is noted that although the claimant has sought and received treatment from mental health services, her treatment [has] generally been routine and conservative. She has no inpatient admissions during the relevant time period and the treatment she receives [h]as been effective in controlling her symptoms.

I have considered the claimant's obesity ... and believe that the … evidence … shows that the claimant still has the abilities to sit, stand, walk, lift, carry, push, pull, do postural functions, manipulate, and perform other basic work-related activities consistent with the residual functional capacity established herein despite obesity.

I also acknowledge that the claimant has made allegations of memory loss symptoms related to her MRSA treatment and subsequent hospitalization in 2008. In fact, the claimant is prescribed medications from a neurologist for memory retention and concentration deficits. However, this condition is poorly

documented… and there are no neurology reports in the file that indicate that the claimant does in fact suffer from memory deficits…

The objective medical evidence of record does not support limitations beyond those outlined in the residual functional capacity above …

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment…

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate …

The claimant has not been under a disability … from June 9, 2008, through the date of this decision…. (R.13-19).

The record demonstrates that the plaintiff suffers from a wide range of ailments but after comparing the medical findings with the claimant's allegations, the Commissioner concluded that her description of their impact is not credible. Determinations of credibility rest with the Commissioner. Diaz v. Commmissioner, 577 F.3d 500,506 (3d Cir.2009). In making the credibility determination, the Commissioner concluded that the plaintiff's allegations were exaggerated. This conclusion is supported by the evidence of record.

Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law.   Lichtenstein v. UPMC,   F.3d   (3d Cir. 2012). In the instant case, there are no material factual issues in dispute, the decision of the Commissioner is supported by substantial evidence, and the defendant's motion for summary judgment will be granted; the plaintiff's motion for summary judgment will be denied and the decision of the Commissioner will be affirmed.

An appropriate Order and judgment will be entered.

ORDER

AND NOW, this 24th day of January, 2013, for the reasons set forth in the foregoing

Memorandum, the defendants Motion for Summary Judgment (ECF. 17 ) is GRANTED; the

plaintiff's Motion for Summary Judgment (ECF. 15) is DENIED, and the decision of the

Commissioner is AFFIRMED.

s/ Robert C. Mitchell
United States Magistrate Judge